Peter R. Afrasiabi (SBN 193336)
Email: pafrasiabi@onellp.com
Taylor C. Foss (SBN 253486)
Email: tfoss@onellp.com
Christopher S. Skinner (SBN 342830)
Email: cskinner@onellp.com
**ONE LLP**
23 Corporate Plaza, Suite 150-105
Newport Beach, CA 92660
Telephone: (949) 502-2870
Facsimile: (949) 258-5081

Attorney for Plaintiffs,
Elizabeth Waterman and
NY Black and Gold Corporation

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

ELIZABETH WATERMAN, an individual; and NY BLACK AND GOLD CORPORATION, a California corporation,

Plaintiffs,

v.

TWITTER, INC., a Delaware corporation; X CORP., a Delaware corporation; and DOES 1-10, inclusive,

Defendants.

Case No. 2:24-cv-04881-SRM-PD
Hon. Serena R. Murillo

**PLAINTIFFS' OPPOSITION TO DEFENDANT X CORP.'S MOTION FOR JUDGMENT ON THE PLEADINGS**

Date: July 31, 2025
Time: 1:30 p.m.
Crtrm: 5D

# TABLE OF CONTENTS


I. INTRODUCTION .......... 1

II. BACKGROUND .......... 3

III. ARGUMENT .......... 6

A. Standard .......... 6

B. Plaintiff Properly Pleaded a Claim for Direct Copyright Infringement. .......... 7

C. Plaintiff Properly Pleaded a Claim for Secondary Copyright Infringement. .......... 13

1. Plaintiff Has Properly Alleged Contributory Infringement .......... 13

2. Plaintiff Has Properly Alleged Vicarious Infringement. .......... 15

D. Plaintiff Was Not Required to Plead Around X's Statute of Limitations Defense and Plaintiff's Claims Are Governed by the Discovery Rule. .......... 17

E. If the Court Determines the Motion Has Merit, the Court Should Granted Leave to Amend Because the Alleged Deficiencies Had Never Been Brought to Plaintiff's Attention Until Now. .......... 20

IV. CONCLUSION .......... 23

# TABLE OF AUTHORITIES

**Cases**

*A&M Recs., Inc. v. Napster, Inc.*,
239 F.3d 1004 (9th Cir. 2001) .......... 16

*ASARCO, LLC v. Union Pac. R.R. Co.*,
765 F.3d 999 (9th Cir. 2014) .......... 17, 18

*Aschroft v. Iqbal*,
556 U.S. 662 (2009) .......... 11

*Back Story, LLC v. Amazon.com Servs.*,
2025 U.S. Dist. LEXIS 18069 (C.D. Cal. Jan. 30, 2025) .......... 22

*Backgrid USA, Inc. v. Twitter, Inc.*,
2024 U.S. Dist. LEXIS 103090 (C.D. Cal. June 7, 2024) .......... 9, 17

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 6

*Bell v. Witmott Storage Servs.*,
12 F. 4th 1065 (9th Cir. 2021) .......... 8

*Bonanno v. Thomas*,
309 F.3d 320 (9th Cir. 1962) .......... 7

*Bottlehood, Inc. v. Bottle Mill*,
2012 U.S. Dist. LEXIS 57381 (S.D. Cal. Apr. 23, 2012) .......... 13

*Cafasso v. Gen. Dynamics C4 Sys.*,
637 F.3d 1047 (9th Cir. 2011) .......... 22

*DeSoto v. Yellow Freight Sys., Inc.*,
957 F.2d 655 (9th Cir. 1992) .......... 22

*Dworkin v. Hustler Magazine, Inc.*,
867 F.2d 1188 (9th Cir. 1989) .......... 7

*Ellison v. Robertson*,
357 F.3d 1072 (9th Cir. 2004) .......... 14

*Eminence Capital, LLC v. Aspeon, Inc,.*
316 F.3d 1048 (9th Cir. 2003) .......... 7

*Enron Oil Trading & Transp. Co. v. Wallbrook Ins. Co.*,
132 F.3d 526 (9th Cir. 1997) .......... 7

*Fodor v. AOL Time Warner, Inc.*,
217 F. App'x 622 (9th Cir. 2007) .......... 19

*Fonovisa, Inc. v. Cherry Auction, Inc.*,
76 F.3d 259 (9th Cir. 1996) .......... 15

*Fox v. Ethicon Endo-Surgery, Inc.*,
35 Cal. 4th 797, 27 Cal. Rptr. 3d 661, 110 P.3d 914 (2005) .......... 19

*Grabowski v. Ariz. Bd. of Regents*,
2024 U.S. Dist. LEXIS 6577 (D. Ariz. Jan. 11, 2024) .......... 21

*Grisham v. Phillip-Morris, Inc.*,
670 F. Supp. 1014 (C.D. Cal. 2009) .......... 18

*Hal Roach Studios v. Richard Feiner & Co.*,
896 F.3d 1542 (9th Cir. 1990) .......... 3

*IO Group, Inc. v. Jordon*,
708 F. Supp. 2d 989 (N.D. Cal. 2010) .......... 9

*Jones v. Bock*,
549 U.S. 199 (2008) .......... 17

*Kermani v. Law Office of Joe Pezzuto, LLC*,
2014 WL 260650 (C.D. Cal. Jan. 23, 2014) .......... 6

*Kuhmstedt v. Enttech Media Grp., LLC*,
2022 WL 1769126 (C.D. Cal. Apr. 11, 2022) .......... 18

*Level Up, LLC v. Rieder*,
2025 U.S. Dist. LEXIS 84380 (C.D. Cal. May 1, 2025) .......... 7

*Lipton v. Pathogenesis Corp.*,
284 F.3d 1027 (9th Cir. 2002) .......... 22

*Lopez v. Smith*,
203 F.3d 1122 (9th Cir. 2000) .......... 22

*Lusnak v. Bank of Am., N.A.*,
883 F.3d 1185 (9th Cir. 2018) .......... 17

*Luvdarts, LLC v. AT & T Mobility, LLC*,
710 F.3d 1068 (9th Cir. 2013) ........ 12, 14

*MDY Indus., LLC v. Blizzard Ent., Inc.*,
629 F.3d 928 (9th Cir. 2010) ........ 13

*Media Right Techs., Inc. v. Microsoft Corp.*,
922 F.3d 1014 (9th Cir. 2019) ........ 18, 20

*Metro-Goldwyn-Mayer Studio, Inc. v. Grokster, Ltd.*,
545 U.S. 913 (2005) ........ 13

*Michael Grecco Prods., Inc. v. RADesign, Inc.*,
112 F.4th 144 (2d Cir. 2024) ........ 20

*Michael Grecco Prods. v. BDG Media Inc.*,
2019 U.S. Dist. LEXIS 235754 (C.D. Cal. Nov. 21, 2019) ........ 19

*Michael Grecco Prods. v. TikTok, Inc.*,
2025 U.S. Dist. LEXIS 46287 (C.D. Cal. Mar. 12, 2025) ........ 11, 12

*Morongo Band of Mission Indians v. Rose*,
893 F.2d 1074 (9th Cir. 1990) ........ 22

*NL Indus. v. Kaplan*,
792 F.2d 896 (9th Cir. 1986) ........ 7

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
494 F.3d 788 (9th Cir. 2007) ........ 13, 15

*Petrella v. MGM*,
572 U.S. 663, 134 S. Ct. 1962 (2014) ........ 19

*RADesign, Inc. v. Michael Grecco Prods., Inc.*,
2025 U.S. Dist. LEXIS 2369 (June 16, 2025) ........ 20

*Roley v. New World Pictures, Ltd.*,
19 F.3d 479 (9th Cir. 1994) ........ 19

*Sams v. Yahoo Inc.*,
713 F.3d 1175 (9th Cir. 2013) ........ 17

*Sony Corp. Am. v. Universal City Studios, Inc.*,
464 U.S. 417 (1984) ........ 13

*Stross v. Meta Platforms, Inc.*,
Case No. 2:21-cv-08023-MCS-AS, 2022 U.S. Dist. LEXIS 100689 (C.D. Cal. Apr. 6, 2022) .......... 11

*Sun Savings and Loan Ass'n v. Dierdorff*,
825 F.3d 187 (9th Cir. 1987) .......... 7

*Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*,
368 F.3d 1053 (9th Cir. 2004) .......... 21

*UMG Recordings, Inc. v. Augusto*,
628 F.3d 1175 (9th Cir. 2011) .......... 8

*United States v. Corinthian Colleges*,
655 F.3d 984 (9th Cir. 2011) .......... 14

*VHT, Inc. v. Zillow Grp., Inc.*,
918 F.3d 723 (9th Cir. 2019) .......... 9

*Warner Chappell Music, Inc. v. Nealy*,
Case No. 22-1078, __ S. Ct. __ (May 9, 2024) .......... 19

*Wasco Prods. v. Southwall Techs., Inc.*,
435 F.3d 989 (9th Cir. 2006) .......... 19

*Williams v. Cty. of L.A.*,
No. 2:24-cv-04071-DOC-BFM, 2025 U.S. Dist. LEXIS 78644 (C.D. Cal. Mar. 20, 2025) .......... 22

*Williams-Sonoma, Inc. v. Amazon.com, Inc.*,
2020 U.S. Dist. LEXIS 163066 (N.D. Cal. Aug. 17, 2020) .......... 11

*Zarco v. Symons*,
No. EDCV 22-594-MEMF, 2025 U.S. Dist. LEXIS 116759 (C.D. Cal. June 17, 2025) .......... 22

**Statutes**

17 U.S.C. § 501(a) .......... 7

17 U.S.C. § 501(b) .......... 8

17 U.S.C. § 512 .......... 14

**Rules**

Fed. R. Civ. P. 8 ........ 9, 17, 19

Fed. R. Civ. P. 8(a) ........ 6

Fed. R. Civ. P. 8(a)(2) ........ 2

Fed. R. Civ. P. 9 ........ 19

Fed. R. Civ. P. 9(b) ........ 19

Fed. R. Civ. P. 12 ........ 17

Fed. R. Civ. P. 12(b)(6) ........ 7

Fed. R. Civ. P. 12(c) ........ 7, 18

Fed. R. Civ. P. 15(a) ........ 22

Fed. R. Civ. P. 15(a)(1) ........ 1, 21

Fed. R. Civ. P. 15(a)(2) ........ 22

Fed. R. Civ. P. 56 ........ 9

**Other Authorities**

https://x.com/elonmusk/status/1910840422789763511 (accessed 4/22/2025) ........ 5

https://x.com/jack/status/1910829254214115681 (accessed 4/22/2025) ........ 5

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Just as in the companion *Michael Grecco* case, over a year into this case, despite the pleadings being closed, and for the first time, Defendants Twitter, Inc. and X Corp. (collectively, "X") argue a claim is not stated. X is mistaken, as both X and its predecessor counsel have known for the last year.

Plaintiffs Elizabeth Waterman and NY Black and Gold Corporation (together "Plaintiff") commenced this litigation on June 10, 2024. Dkt. No. 1. Plaintiff amended her Complaint as a matter of right pursuant to Fed. R. Civ. P. 15(a)(1) for the sole purpose of correcting X Corp.'s state of incorporation. *Compare* Dkt. No. 1 ¶ 6 (state of incorporation listed as Delaware) with Dkt. No. 12 (FAC) ¶ 6 (state of incorporation listed as Nevada). Plaintiff served the FAC on X. Dkt. No. 17 (X Corp.'s registered agent served on June 19, 2024). Quinn Emmanuel noticed an appearance on behalf of X, see Dkt. No. 18 (stipulation for an extension of time for X to respond to the FAC filed on July 8, 2024), and X filed its Answer to the FAC about 11 months ago. Dkt. No. 19 (Answer filed on August 8, 2024).

Between the time X's counsel at Quinn Emmanuel noticed an appearance and when they moved to withdraw on May 22, 2025—a span of 318 days—there wasn't a whisper of deficiencies with Plaintiff's operative pleading. Nothing. And when Plaintiff filed her Second Amended Complaint, *see* Dkt. No. 33 (SAC), on February 12, 2025 solely to add allegations of new infringements (and not to cure any alleged deficiencies with the SAC), there wasn't a whisper of deficiencies with the SAC. Nothing. This series of events should speak volumes to X's new counsel's Motion for Judgment on the Pleadings ("Motion").

At bottom, Plaintiff pleaded enough facts to notify X of the type of infringing conduct alleged and the source of Plaintiff's claims. More specifically, Plaintiff has pleaded sufficient facts to establish direct, contributory, and vicarious liability for copyright infringement. For example, Plaintiff pleaded specifically:

> Defendants directly, vicariously, and/or contributorily infringed, and unless enjoined, will continue to infringe Plaintiffs' copyrights by reproducing, displaying, distributing, and utilizing the Photos for purposes of trade without authorization of or payment to Plaintiffs in violation of 17 U.S.C. § 501 et seq. Defendants exercise control over which images and posts are displayed and curated on Twitter. Such curation proximately causes infringing material to be distributed and published on Twitter and subsequently viewed by users on Twitter.

SAC ¶ 136. This curation by X—and not by its users—is a factual assertion that undermines X's motion at this stage of the case. Further, Plaintiff opted for "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Regardless, X is certainly on notice of the claims against it, and has been for over a year and has never raised a single deficiency with any of Plaintiff's operative pleadings, but X's counsel rejected any discussion of amendment during the parties' conferral—opting instead for unnecessary time-consuming, expensive, and wasteful motions practice.

Further, X's attempt to require Plaintiff to plead facts in advance to rebut an affirmative defense—namely the statute of limitations—is incorrect as a matter of law. Despite an offer to provide evidence of dates of discovery, X's counsel declined to confer further, despite the fact that such facts would obviate the need to brief X's statute of limitations argument. The verifiable facts pertaining to the discovery of the infringements, which X's counsel refused to consider, are comprised of proffered testimony and documents from Plaintiff demonstrating that the dates of discovery all occur within the three-year limitations period.

Regardless, Plaintiff remains open to amending its pleadings and has expressed this openness to X's new counsel—though this overture was wholesale rejected contrary to the spirit of the Court's Civil Standing Order: "Consequently, parties should carefully consider and weigh an opponent's contentions as to the

deficiencies in a pleading to determine if an amendment would cure the defects. The moving party, in turn, should agree to any amendment that would cure the defect." Standing Order for Newly Assigned Civil Cases (Dkt. No. 40) § H.1. Indeed, Plaintiff has already raised the issue of future amendment of the SAC to again add more instances of infringement. These additional instances—again where Plaintiff sent DMCA takedown demands to X's registered DMCA agent and where X took no action to remove the infringing work—are part of the continued and systemic copyright infringement occurring under Elon Musk's tenure at X.

The Motion should be denied.

## II. BACKGROUND[1]

Plaintiff Elizabeth Waterman ("Waterman") is an American fine art photographer with a distinctive body of work depicting the ongoing metamorphosis of artists and performers of many genres. Her images frequently explore female sexuality, sex work, obsessions, and portraits of artists. SAC ¶ 4. Plaintiff NY Black and Gold Corporation ("NYBG") is an image-centric social media company, owned and operated by Waterman. *Id.* at ¶ 5. Plaintiffs Waterman and NYBG own the rights to these photographs. *Id.* at ¶ 10. The Photos at issue in this case were timely registered with the United States Copyright Office. *Id.* at ¶¶ 11-12.

On X, users can send out a text-based messages, or alternatively can tweet images. SAC ¶¶ 14-15. User-uploaded images are subject to the safe harbor provision of the Digital Millennium Copyright Act, which precludes liability for copyright infringement by an internet service provider such as Twitter, provided that Twitter complies with the DMCA and, among other things, requests by copyright owners to remove infringing materials upon receipt of a demand to do so. *Id.* at ¶ 16.

[1] These facts are presumed true for purposes of the Motion. *See Hal Roach Studios v. Richard Feiner & Co.*, 896 F.3d 1542, 1550 (9th Cir. 1990)

X, seemingly upon Elon Musk taking over and instituting a private version of what he has done with "DOGE" to X, stopped honoring DMCA takedown requests and has continued to facilitate copyright infringement despite repeated DMCA takedown requests, such that Defendants' conduct removes it from the safe harbor provided by the DMCA and amounts to copyright infringement. SAC ¶ 17. Plaintiff sent DMCA takedown requests in compliance with the statute but—apart from a few isolated incidents—X took no action to cease its copyright infringement. *Id.* at ¶ 18. Plaintiff sent these DMCA takedown demands to the registered DMCA agent for X as well as to the subsequent registered DMCA agent for X. *Id.* at ¶ 19. Many of the Photos ***were continuing to be infringed by X as of the filing of the SAC***. *Id.* at ¶ 22. And absent safe harbor protection under the DMCA, X's reproduction and public display of the Photos amounts to copyright infringement. *Id.* at ¶ 23.

None of the users that uploaded the Photos for public display and distribution on X had permission, license, or authority to do so. SAC ¶ 26. At no point did X seek a license for the Photos and at no point did Plaintiff provide any such permission or license for Defendants to use the Photos. *Id.* at ¶ 27. To the contrary, Plaintiff repeatedly requested that X cease their copyright infringement. *Id.* Plaintiff has never sold, licensed, or authorized the use of the Photos to X. *Id.*
Plaintiff is informed and believes that X violated federal law by willfully infringing Plaintiff's copyrights to at least the Photos and by simply ignoring takedown requests—X has simply decided that copyright compliance is too expensive so has abandoned even a pretense of a DMCA-compliant internal body. SAC ¶¶ 24-25. This is simply X's new copyright-blind policy to ignore takedowns in line with Musk's public pronouncements on the problem with giving people IP rights.

/ / /

/ / /

/ / /

/ / /

In a very timely and revealing interaction, in a tweet on X, Jack Dorsey, the founder of Twitter, tweeted on April 11, 2025, "delete all IP law":




*See* https://x.com/jack/status/1910829254214115681 (accessed 4/22/2025). In response, Musk tweeted his agreement:




*See* https://x.com/elonmusk/status/1910840422789763511 (accessed 4/22/2025).

Specifically, X reproduced, displayed, and distributed the Photos, and/or derivatives thereof without permission, consent, or license. SAC ¶ 28. On information and belief, Defendants have generated revenue through their social media platform. *Id.* at ¶ 29. The website traffic translates into substantial ill-gotten

commercial advantage and revenue generation for Defendants as a direct consequence of their infringing actions. *Id.*

Despite receiving notice of its infringement, X failed to remove the infringing Photos from the platform. SAC ¶¶ 24-25. X previously maintained and enforced a policy for compliance with the DMCA such that X knows and understands its obligations pursuant to the copyright laws as set forth in the Copyright Act as well as in the Digital Millennium Copyright Act. *Id.* Further still, X failed and/or refused to take down nearly all of the foregoing instances of infringement, despite the multiple notices pursuant to the DMCA and despite Plaintiff filing this lawsuit. *Id*. At the time Plaintiff filed the SAC, a year into the case, numerous reported infringements remained up and live on X. *Id.* at ¶ 22.

In sum, X's copyright infringement is rampant, unceasing, and reckless by the continuing infringement of the overwhelming majority of the photos at issue in this litigation at the time the SAC was filed—a year into the litigation. SAC ¶ 22. And X exercises control over which images and posts are displayed and curated on its platform. *Id.* at ¶ 136. Such curation proximately causes infringing material to be distributed and published on X and subsequently viewed by its users. *Id.*

## III. ARGUMENT

### A. Standard.

The liberal pleading standards of Fed. R. Civ. P. 8(a), which require only a "short and plain statement of the claim showing the pleader is entitled to relief," remains in full force. Since its purpose is to "give the defendant fair notice of what the claim is and the grounds upon which it rests," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up), "[t]he issue on a motion to dismiss for failure to state a claim is not whether the claimant will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims asserted." *Kermani v. Law Office of Joe Pezzuto, LLC*, 2014 WL 260650, at *1 (C.D. Cal. Jan. 23, 2014).

A party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial[.]" Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings is "functionally identical" to a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6). *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989). When scrutinizing a motion for judgment on the pleadings under Rule 12(c), courts must accept as true all material allegations in the complaint and view them in the light most favorable to the plaintiff. *NL Indus. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986); *see also Level Up, LLC v. Rieder*, 2025 U.S. Dist. LEXIS 84380, at *8-9 (C.D. Cal. May 1, 2025) ("[I]n addition to assuming the truth of the facts plead, the court must construe all reasonable inferences drawn from those facts in the nonmoving party's favor.") (citations omitted). The Court should only dismiss the case if "it appears beyond a doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Sun Savings and Loan Ass'n v. Dierdorff*, 825 F.3d 187, 191 (9th Cir. 1987).

In evaluating a Rule 12(c) motion for judgment on the pleadings, courts should grant leave to amend "unless such an amendment would be futile. *Enron Oil Trading & Transp. Co. v. Wallbrook Ins. Co.*, 132 F.3d 526, 529 (9th Cir. 1997); *see also Eminence Capital, LLC v. Aspeon, Inc,.* 316 F.3d 1048, 1051 (9th Cir. 2003) ("The court should freely give leave when justice so requires."). When granting judgment on the pleadings, a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured. *Bonanno v. Thomas*, 309 F.3d 320, 322 (9th Cir. 1962).

**B. Plaintiff Properly Pleaded a Claim for Direct Copyright Infringement.**

X claims that Plaintiff failed to properly allege direct copyright infringement. Mot. at 7:7-9:4. Not so. A claim direct for direct copyright infringement must state: (1) ownership of a valid copyright, and (2) violation by the alleged infringer of at least one of the exclusive rights granted to copyright owners under the Copyright

Act. 17 U.S.C. § 501(a); *Bell v. Witmott Storage Servs.*, 12 F. 4th 1065, 1071 (9th Cir. 2021); *UMG Recordings, Inc. v. Augusto*, 628 F.3d 1175, 1178 (9th Cir. 2011). Here, Plaintiff alleges it "created many high value photographs throughout his career and has authored many iconic images that have generated substantial amounts of money through sales and publishing. In the marketplace, professional photographs carry tremendous monetary value. As noted above, Plaintiff owns the rights to these photographs." SAC ¶¶ 11, 30, 37, 44, 52, 60, 68, 82, 90, 98, 106, 113, and 126. This plausibly alleges ownership under 17 U.S.C. § 501(b). Plaintiff furthermore alleges that X unlawfully "reproduc[ed], publicly display[ed], and distribut[ed] the Photos without permission, license, or authorization[,]" *id.* at ¶ 17, and "Plaintiff has never sold, licensed, or authorized the use of the Photos to [X]." *Id.* at ¶ 27.

Among other things:

- Plaintiff attached as Exhibit A to the SAC true and correct copies of each of the Photos. Dkt. No. 33-1. Not only that, but Plaintiff included in the SAC: (1) the registration number of the photograph with the United States Copyright Office and the date of registration (*see* Exhibit B to the SAC, Dkt No. 33-2); (2) the date the photo was posted on X (*see* SAC ¶¶ 32, 39, 46, 54, 62, 70, 76, 84, 92, 100, 108, 115, 121, 128 ); and (3) the date when takedown requests were sent to Twitter and X, independently (*see* SAC ¶¶ 33, 34, 40, 41, 47, 48, 55, 56, 63, 64, 71, 72, 77, 78, 85, 86, 93, 94, 101, 102, 109, 110, 116, 117, 122, 123, 129, 130).
- Plaintiff attached as Exhibit C "[t]rue and correct copies of instances of [X] reproducing, publicly displaying, and distributing the Photos without permission, license, or authorization." *Id.* at ¶ 17; *see* Dkt. No. 33-3.
- Plaintiff alleged that "Plaintiffs are informed and believe that Defendants have violated federal law by willfully infringing Plaintiffs' copyrights to at least the Photos identified in Exhibit A. Specifically, Defendants reproduced,

displayed, and distributed the Photos, and/or derivatives thereof without permission, consent, or license." *Id.* at ¶ 28.

- Plaintiff alleged that "[d]espite Plaintiffs sending valid DMCA takedown notices, many of the Photos are continuing to be infringed by Defendants as of the filing of this Complaint." *Id.* at ¶ 22.

Thus, Plaintiff has clearly met the pleading requirements of Rule 8. *See IO Group, Inc. v. Jordon*, 708 F. Supp. 2d 989, 998 (N.D. Cal. 2010) (allegations sufficient where plaintiff "has alleged that it owns registered copyrights in its photographic and audiovisual works" and that defendant "reproduced, distributed, and publicly displayed . . . Plaintiff's copyrighted work").

X argues that Plaintiff does not and cannot[2] invoke volitional conduct. Mot. at 9:6-12:3. In support, X primarily invokes *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723 (9th Cir. 2019). But X's reliance on *VHT* is misplaced. Critically, *Zillow* did not weigh on ***pleading*** standards. X quotes from a discussion concerning the appeal of ***Rule 56 findings***, in an effort to improperly hold Plaintiff to a higher pleading burden than Rule 8 requires. *See, e.g., Zillow*, 918 F.3d at 733-34 ("The district court granted summary judgment to Zillow[.]").

As alleged:

- ***X*** has "stopped honoring DMCA takedown requests and have continued to facilitate copyright infringement despite repeated DMCA takedown requests, such that Defendants' conduct removes it from the safe harbor provided by the DMCA and amounts to copyright infringement. True and correct copies of

[2] It seems to Plaintiff that X's argument that Plaintiff "cannot" allege volitional conduct would immunize X—and potentially all social media companies from any allegations of copyright infringement. Such an argument is belied by the wealth of copyright infringement cases against social media companies—X and Twitter included. *See, e.g.*, *Backgrid USA, Inc. v. Twitter, Inc.*, 2024 U.S. Dist. LEXIS 103090 (C.D. Cal. June 7, 2024) (Gee, C.J.) (denying motion to dismiss on analogous grounds to X's argument herein).

instances of Defendants reproducing, publicly displaying, and distributing the Photos on Twitter without permission, license, or authorization are attached hereto as Exhibit C," SAC ¶ 17;

- ***X*** "took no action to cease their copyright infringement," *id.* at ¶ 18;
- ***X*** was continuing to infringe the Photos "as of the filing of this [Second Amended] Complaint;" *id.* at ¶ 22;
- ***X's*** "reproduction and public display of the Photos amounts to copyright infringement," *id.* at ¶ 23;
- ***X*** failed to "seek a license for the Photos and at no point did Plaintiffs provide any such permission or license for Defendants to use the Photos. To the contrary, Plaintiffs repeatedly requested that Twitter cease its copyright infringement. Plaintiffs have never sold, licensed, or authorized the use of the Photos to Defendants," *id.* at ¶ 27;
- ***X*** "violated federal law by willfully infringing Plaintiffs' copyrights to at least the Photos identified in Exhibit A. Specifically, Defendants reproduced, displayed, and distributed the Photos, and/or derivatives thereof without permission, consent, or license," *id.* at ¶ 28;
- ***X*** did not remove infringing Photos from its platform despite "Defendants' clear knowledge and prior practice of honoring takedown demands indicat[ing] either a willful choice to stop honoring DMCA takedown demands or a reckless disregard for its known obligations. Either way, Defendants' conduct amounts to willful copyright infringement," *id.* at ¶ 24;
- ***X*** failed and/or refused to take down multiple instances of infringement, "[d]espite Plaintiffs sending valid DMCA takedown notices," *id.* at ¶ 22; and
- ***X*** "directly, vicariously, and/or contributorily infringed, and unless enjoined, will continue to infringe Plaintiffs' copyrights by reproducing, displaying, distributing, and utilizing the Photos for purposes of trade without authorization of or payment to Plaintiffs in violation of 17 U.S.C. § 501 et

seq. [X] exercise control over which images and posts are displayed and curated on Twitter. Such curation proximately causes infringing material to be distributed and published on [X] and subsequently viewed by users on [X]," *id.* at ¶ 136.

By every measure, the allegations, taken together, plead volition. *See Williams-Sonoma, Inc. v. Amazon.com, Inc.*, 2020 U.S. Dist. LEXIS 163066, at *19 (N.D. Cal. Aug. 17, 2020) (volitional conduct sufficiently pleaded where plaintiff alleged defendant was "actually performing" acts of reproduction and display). Indeed, this is likely why Quinn Emanuel never moved to dismiss to begin with!

In *Stross*, Facebook attempted to characterize the news feed managed by Facebook as "automated" and therefore not volitional, but the Court however stated: "There is no basis in the law to conclude that active management of a website, which would constitute volitional conduct if performed by a human, fails to meet that element because an algorithm designed by a human engineer manages the website instead." *Stross v. Meta Platforms, Inc*., Case No. 2:21-cv-08023-MCS-AS, 2022 U.S. Dist. LEXIS 100689, at *7 (C.D. Cal. Apr. 6, 2022).

X—without any direction from its users—selects, orders, arranges, and displays infringing images from X accounts of X's own choosing to X users of X's choosing. *See* SAC ¶ 136. Plaintiff has specifically asserted that X "has generated revenue through its social media platform" because "website traffic translates into substantial ill-gotten commercial advantage and revenue generation for Defendants as a direct consequence of their infringing actions." *Id.* at ¶ 29. The Court can reasonably infer that X took an active role in curating how the posts on its social media platform are seen such that X—upon notice of the infringement still left images up—was a proximate cause in that copyright infringement occurring. *Aschroft v. Iqbal*, 556 U.S. 662, 678 (2009).

At page 14 of its motion, X short-quotes *Michael Grecco Prods. v. TikTok, Inc*., 2025 U.S. Dist. LEXIS 46287 (C.D. Cal. Mar. 12, 2025), ostensibly for the

purpose of avoiding the portion of the quotation that demonstrates the sufficiency of Plaintiff's pleadings. Specifically, the quote for what is "[m]issing" from the notices as pleaded are "when they were sent and how they identified the media that infringed the Work." *Id.* at *9. Plaintiff specifically pleaded such facts here. SAC ¶¶ 32, 39, 46, 54, 62, 70, 76, 84, 92, 100, 108, 115, 121, 128 (date and link to initial posts); 33, 34, 40, 41, 47, 48, 55, 56, 63, 64, 71, 72, 77, 78, 85, 86, 93, 94, 101, 102, 109, 110, 116, 117, 122, 123, 129, 130 (identifying when the DMCA notices were sent and who they were sent to); Exh. A (the images); Exh. B (the Copyright Registration Numbers). These are not "vague notices" as discussed by the *TikTok* court. 2025 U.S. Dist. LEXIS 46287, at *9 (citing *Luvdarts, LLC v. AT & T Mobility, LLC*, 710 F.3d 1068, 1072-73 (9th Cir. 2013) (recognizing the DMCA precludes vague notices comprising only lists of titles that "do not identify which of these titles were infringed, who infringed them, or when the infringement occurred").

In sum, Plaintiff properly pleaded direct copyright infringement. If the Court doubts of the sufficiency of pleadings in the SAC, Plaintiff requests leave to amend to add further facts as the Court deems necessary. *See infra* § III(E). Plaintiff requests this with the caveat that Plaintiff, the Court, and X knows how its platform works, and Plaintiff, the Court, and X all know that X controls its business to maximize the financial benefit it receives from the content that its users upload to the platform. While Plaintiff maintains that X is on notice of the allegations against it and that Plaintiff has articulated a viable claim, Plaintiff can readily plead additional facts to clarify X's alleged doubts.

/ / /

/ / /

/ / /

/ / /

/ / /

### C. Plaintiff Properly Pleaded a Claim for Secondary Copyright Infringement.[3]

Contributory copyright infringement requires that the infringer intentionally induce or actively encourage direct infringement, whereas vicarious copyright infringement involves a situation where the infringer (1) has the right and ability to stop the copyright infringement, but failed to, and (2) directly profits from the infringement. *See MDY Indus., LLC v. Blizzard Ent., Inc.*, 629 F.3d 928, 937-38 (9th Cir. 2010).

Plaintiff alleges as much in its short and plain statement that "Defendants have received substantial benefits in connection with the unauthorized reproduction, distribution, and utilization of the Photos for purposes of trade, including by increasing the traffic to their websites and use of their service." SAC ¶¶ 29, 140. While Plaintiff can certainly add more details to the foregoing via amendment, X is being disingenuous to the extent it would assert that it lacks notice of the claims against it.

#### 1. Plaintiff Has Properly Alleged Contributory Infringement.

"One infringes contributorily by intentionally inducing or encourage direct infringement." *Metro-Goldwyn-Mayer Studio, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005). In the Ninth Circuit, a party is liable for copyright infringement if it "(1) has knowledge of another's infringement and (2) either (a) materially contributes to or (b) induces that infringement." *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 795 (9th Cir. 2007).

[3] The "lines between direct infringement, contributory infringement and vicarious liability are not clearly drawn," *Sony Corp. Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 435 n.17 (1984), so at this juncture, it is enough that Plaintiff has properly alleged direct infringement, as set forth above; *see Bottlehood, Inc. v. Bottle Mill*, 2012 U.S. Dist. LEXIS 57381, at *11 (S.D. Cal. Apr. 23, 2012).

An infringer has knowledge for purposes of contributory infringement when the infringer has "actual knowledge" or a "reason to know of direct infringement." *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004). Here, with copyright infringement as a continuing tort, upon notice to multiple accounts at X tasked with addressing infringement, continuing to infringe (by failing to act) becomes a very specific choice with very specific knowledge. *See Luvdarts*, 710 F.3d at 1072. As such, Defendants have "[m]ore than generalized knowledge." *Id*. The specifics of the infringement were set forth in the complaints. Dkt. Nos. 1, 18, 33.

The Motion asserts: "The SAC contains no allegations about Twitter's knowledge of any infringement at issue." Mot. at 10. This is a surprisingly broad statement—ostensibly based on a very narrow definition of knowledge. Indeed, Plaintiff asserted in the SAC that "Plaintiff sent DMCA takedown requests." SAC ¶ 16. Further, Plaintiff sets forth the Copyright registration number for the photograph and the dates on which the DMCA takedown demands were sent to Twitter and X. *See id.* at ¶¶ 32, 39, 46, 54, 62, 70, 76, 84, 92, 100, 108, 115, 121, 128 (date and link to posts); 33, 34, 40, 41, 47, 48, 55, 56, 63, 64, 71, 72, 77, 78, 85, 86, 93, 94, 101, 102, 109, 110, 116, 117, 122, 123, 129, 130 (DMCA takedown notices).

Ultimately, X's bait-and-switch is revealed on page 11 of the Motion. X's assertion that the SAC fails to allege that the Plaintiff's takedown notices do not provide the information required by the ***affirmative defense*** of 17 U.S.C. § 512 is a roundabout way of asserting that Plaintiff's notices are deficient. Beyond the fact that this argument failed in the *Backgrid v. Twitter* litigation, this argument is a factual dispute on an affirmative defense and not appropriate for a motion for judgment on the pleadings. Nonetheless, in raising the sufficiency of the Plaintiff's DMCA takedown notices—which were explicitly referenced in the SAC by date and email recipient—the Court can review those for purposes of this motion. *See United States v. Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011).

Regarding material contribution, Ninth Circuit authority instructs that actual knowledge—like that held by X as set forth above—establishes "material contribution" for purposes of contributory infringement. As such, a finding that X had knowledge of the infringement based on the DMCA takedown notices—as pleaded in the complaint (SAC ¶¶ 33, 34, 40, 41, 47, 48, 55, 56, 63, 64, 71, 72, 77, 78, 85, 86, 93, 94, 101, 102, 109, 110, 116, 117, 122, 123, 129, 130)—conclusively establishes both the material contribution prong and thus contributory infringement. *Id.*

X argues that the SAC fails to plead simple measures showing that X can remove the infringing conduct. Mot. at 11:21-12:11. This is a hyper technical reading of the complaint to somehow avoid viewing a "takedown" as a simple remedial measure. A DMCA "takedown" is a central part of this case, and yet new counsel is asserting that it does not know that a "takedown" notice is a request for the infringing work to be "taken down." The Court must reject X's argument. X (and its counsel) know that X is able to take down infringing posts and that that is the most basic obligation it has when it gets a DMCA takedown notice of alleged infringement by a rightsholder. That is the very center of gravity of the DMCA that allows platforms a potential safe harbor to traffic in user-uploaded infringements until they get notice from Plaintiff.

Regarding inducement, the question is whether X "provide[s] a service with the object of promotion its use to infringe copyright." *Visa*, 494 F.3d at 801. That is precisely the case here, where internet traffic—as pleaded at SAC paragraph 140—determines X's financial benefit. *See Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264 (9th Cir. 1996) ("[W]e agree . . . that providing the site and facilities for knowing infringing activity is sufficient to establish contributory liability.").

**2. Plaintiff Has Properly Alleged Vicarious Infringement.**

Plaintiff properly pleaded vicarious copyright infringement because it alleged X has the "right and ability to supervise the infringing activity" on its platform and

"a direct financial interest in such activities." *A&M Recs., Inc. v. Napster, Inc.*, 239 F.3d 1004, 1022 (9th Cir. 2001).

Plaintiff pleaded that it sought to have the infringing photographs removed from X's platform pursuant to the DMCA, *see* SAC ¶¶ 17-133—clearly asserting that X has the right and ability to do so. Indeed, X does not deny that it has the right and ability to take down infringing photographs from its website pursuant to DMCA takedown notices. How could it? X has a registered DMCA agent with the Copyright Office—a further fact specifically pleaded by Plaintiff. *Id.* at ¶¶ 17, 20-21. If X intends to assert that the pleaded DMCA takedown notices pursuant to a statutory scheme in the DMCA premised on supervision of infringing activity somehow do not allege X's "right and ability" to supervise what occurs on X's Platform, then Plaintiff is willing to spell out those seemingly obvious facts in an amendment. But it should be clear that Plaintiff's complaint has sufficiently pleaded that X has the legal right to stop or limit the direct infringing conduct as well as the practical ability to do so—specifically through takedown notices.

At page 13 of its motion, X makes the meritless comparison between the facts of this case to those of *Perfect 10 v. Google*. But unlike the facts of that case, where Google would potentially have to "analyze every image on the internet" in its role as a web crawler and search engine, X here need not actively review every photograph on its Platform; rather, X needs only to review the images specifically identified in Plaintiff's DMCA takedown notices. The burden of providing that DMCA notice as to infringement rests with the copyright holder, and—as set forth in the SAC—the Plaintiff provided such notices of the infringement. X chose to ignore the takedown notices.

Plaintiff has pleaded that X operates its business to make money and that it benefits from increased traffic on its Platform. SAC ¶¶ 29, 140; *see Napster*, 239 F.3d at 1023 ("Financial benefit exists where the availability of infringing material acts as a 'draw' for customers."). Plaintiff has also alleged the value in the

photographs of Elizabeth Waterman. SAC ¶¶ 4-5. Yet X now asserts that the SAC failed to allege that X derived a direct financial benefit from the direct infringement. In so doing, X advances a very attenuated argument, namely that while X may receive revenue from its platform and the advertising to people on its platform, because there is not a one-for-one link between advertising revenue and any specific tweet there can be no direct financial benefit. This is effectively claiming there is no forest because a given tree is not a forest—notwithstanding that there are millions of trees. If the Court deems it necessary to clarify that X—a company that was purchased benefitted financially from the infringing activity in the form of advertising fees and increased web traffic—Plaintiff requests leave to amend its complaint to do so and will model its third amended complaint after a complaint in another matter where X moved to dismiss under Rule 12. *See Backgrid*, 2024 U.S. Dist. LEXIS 103090 (denying motion to dismiss on analogous grounds to X's argument herein).

### D. Plaintiff Was Not Required to Plead Around X's Statute of Limitations Defense and Plaintiff's Claims Are Governed by the Discovery Rule.

X finally argues that "a significant number of its claims independently fail because they are time-barred under the applicable statute of limitations." Mot. at 15:10-16:16. X attempts to flip the Federal Rules on their head because it is black letter law—ignored by X in the Motion—that Rule 8 does not require Plaintiff to plead around affirmative defenses. *See Jones v. Bock*, 549 U.S. 199, 216 (2008). "Ordinarily, affirmative defenses . . . may not be raised on a motion to dismiss." *Lusnak v. Bank of Am., N.A.*, 883 F.3d 1185, 1194 n.6 (9th Cir. 2018). The limited carveout to this presumption is when there is "some obvious bar to securing relief on the face of the complaint." *ASARCO, LLC v. Union Pac. R.R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014). In other words, the SAC must establish the defense. *See Sams v. Yahoo Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013). Here, X pleaded statute of

limitations as an affirmative defense. Dkt. No. 19 at 14:1-3 ("The statute of limitations bars Plaintiffs' claims to the extent Plaintiffs allege infringements that accrued outside the three-year limitations period, including any applicable tolling of the limitations period."). And X stipulated that its prior Answer sufficed and applied (its shift in time now should also be barred by estoppel principles). Dkt. No. 35 at 2:21 ("the Parties agree that Defendant's Answer to the FAC applies to the SAC."). There is no "obvious bar to securing relief on the face of the complaint," *ASARCO*, 765 F.3d at 1004, because the governing law in the Ninth Circuit is that copyright infringement is subject to the discovery rule. *See Media Right Techs., Inc. v. Microsoft Corp.*, 922 F.3d 1014, 1022 (9th Cir. 2019) ("Under the discovery rule, a copyright infringement claim accrues—and the statute of limitations begins to run—when a party discovers, or reasonably should have discovered, the alleged infringement." (cleaned up, citations omitted)).

Unless and until Plaintiff pleads when it discovered the infringements—which certainly does not appear in the SAC as having been discovered by Plaintiff outside the limitations period—it is a logical fallacy that X can simply rely on the posting date of the infringements as the date when the statute of limitations began to run as grounds basis to dismiss the SAC in accordance with Fed. R. Civ. P. 12(c). As such, the Court should reject X's argument on the basis that it failed to meet its burden that a number of Plaintiff's claims are time-barred. *See Grisham v. Phillip-Morris, Inc.*, 670 F. Supp. 1014, 1020 (C.D. Cal. 2009).

Even if the Court views X's arguments as meritorious, X's own authority is readily distinguishable and does not support the draconian proposition that the SAC be dismissed without leave to amend:

- In *Kuhmstedt v. Enttech Media Grp., LLC*, 2022 WL 1769126, at *5 (C.D. Cal. Apr. 11, 2022), the district court granted the motion to dismiss, but, conveniently omitted by X, the plaintiff ***was granted leave to amend*** "so that

Plaintiff may add factual allegations regarding his discovery of Defendant's alleged infringement and the applicability of the discovery rule."

- In *Michael Grecco Prods. v. BDG Media Inc.,* 2019 U.S. Dist. LEXIS 235754, at *10 (C.D. Cal. Nov. 21, 2019), the district court granted the motion to dismiss but, conveniently omitted by X, the plaintiff ***was granted leave to amend***.
- In *Wasco Prods. v. Southwall Techs., Inc.*, 435 F.3d 989, 991 (9th Cir. 2006) the decision involved a heightened pleading standard under Rule 9(b), which make its applicability all but nil. Under Rule 9, specificity is required well beyond the pleading standard for Rule 8.
- In *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 808-09, 27 Cal. Rptr. 3d 661, 669, 110 P.3d 914, 921 (2005), the court held a plaintiff must plead its diligence if its claim appears time-barred. As a preliminary matter, this state court case lacks authority in this action. Second, it is not apparent from the face of Plaintiff's complaint that the claims are time-barred. Indeed, copyright infringement is a continuing tort. *See Roley v. New World Pictures, Ltd.*, 19 F.3d 479, 481-82 (9th Cir. 1994) ("In a case of continuing copyright infringements, an action may be brought for all acts that accrued within the three years preceding the filing of the suit."); *see Warner Chappell Music, Inc. v. Nealy*, Case No. 22-1078, __ S. Ct. __ (May 9, 2024); *Petrella v. MGM*, 572 U.S. 663, 672, 134 S. Ct. 1962, 1970 (2014) ("retrospective relief running only three years back from the date the complaint was filed").

Further, X's reliance on *Fodor v. AOL Time Warner, Inc.*, 217 F. App'x 622 (9th Cir. 2007), is misplaced. In that decision, a *pro se* litigant had pleaded multiple wild contentions related to AOL allegedly wiretapping his phone and attempting to blow up his car. Further, the Court in that case made no ruling as to the broader applicability of the *Fox* decision. *Id*. Unlike the litigant in the *Fodor* case, Plaintiff

has pleaded a plausible claim and can gild the lily by pleading however much more X would prefer.

The law is clear that copyright infringement is subject to the discovery rule. *See Media Right Techs.*, 922 F.3d 1014; *Michael Grecco Prods., Inc. v. RADesign, Inc.*, 112 F.4th 144 (2d Cir. 2024). Indeed, in *Michael Grecco Prods.*, the defendant attempted to jettison the discovery rule and made the same pitch as X—infringement under the Copyright Act should run from the initial act of infringement such that the discovery rule does not matter. Not only was that squarely rejected, 112 F.4th at 151 ("Under the discovery rule, a plaintiff has the length of time it takes, using due diligence, to discover the infringement; only from that point does the statute of limitations begin to run"), but in a lengthy and contested certiorari petition process, the Supreme Court rejected the defendant's attempt to get cert. on the question of whether the discovery rule should be jettisoned from copyright law. *See RADesign, Inc. v. Michael Grecco Prods., Inc.*, 2025 U.S. Dist. LEXIS 2369 (June 16, 2025) (Defendant sought cert. on the argument that the Copyright Act should not have the discovery rule anymore; Plaintiff opposed explaining that the Copyright Act has long enshrined the discovery rule and it is consonant with the Copyright Act; held, cert. denied). That bars the legal claim X presses here.

X's statute of limitations argument should be rejected. But Plaintiff is amenable to amending the SAC to identify when each infringement was ***discovered***—as can readily be supported by testimony and supporting documents from Plaintiff to establish that the claims are not time barred given the discovery rule.

**E. If the Court Determines the Motion Has Merit, the Court Should Granted Leave to Amend Because the Alleged Deficiencies Had Never Been Brought to Plaintiff's Attention Until Now.**

The multiple complaints in this action were not in response to any deficiency asserted by Defendant, but rather to properly identify a Defendant and to add further

instances of infringement. The first amendment served to clean up X's place of incorporation. *Compare* Dkt. No. 1 ¶ 6 (state of incorporation listed as Delaware) with Dkt. No. 12 (FAC) ¶ 7 (state of incorporation listed as Nevada). And the second amended served to add new infringements. Dkt. No. 31-2 (proposed second amended complaint with redlines). Defendants (with sophisticated IP counsel at one of the largest law firms in the nation) never once said the pleading lacked sufficient allegations of infringement (or that it failed to allege the date of discovery within the discovery rule), and no amendment was ever made to cure a defendant's assertion that a claim was not stated. By no means is that the same Plaintiff correcting alleged substantive deficiencies a number of times and then going back for a third bite at the amendment apple. Indeed, until X retained new counsel over a year into the litigation, no purported deficiencies had ever been brought to Plaintiff's attention. Plaintiff's first amendment was done as a matter of right pursuant to Fed. R. Civ. P. 15(a)(1), and the second was done via stipulation and not to address alleged substantive issues with the pleading but to add newly discovered infringements. *See Grabowski v. Ariz. Bd. of Regents*, 2024 U.S. Dist. LEXIS 6577, at *9 (D. Ariz. Jan. 11, 2024) ("Although Plaintiff has had several previous amendments and is now proposing to file a fifth complaint, the first amended complaint was filed as a matter of course before University Defendants appeared (Doc. 7) and the second Amended Complaint and Third Amended Complaint were granted via stipulations between the parties.").

While Plaintiff maintains that the SAC adequately pleaded direct, direct, contributory, and vicarious liability for copyright infringement, Plaintiff is willing to amend the SAC to put this issue to bed and move on the merits of X's infringing conduct. Consequently, Plaintiff respectfully requests leave to amend the SAC if the Court determines the Motion warrants dismissal.

"Dismissal without leave to amend is improper unless it is clear . . . that the complaint could not be saved by any amendment." *Thinket Ink Info. Res., Inc. v. Sun*

*Microsystems, Inc*., 368 F.3d 1053, 1061 (9th Cir. 2004); *see also Cafasso v. Gen. Dynamics C4 Sys*., 637 F.3d 1047, 1058 (9th Cir. 2011) ("Normally, when a viable case may be pled, a district court should freely grant leave to amend.") (citing *Lipton v. Pathogenesis Corp*., 284 F.3d 1027, 1039 (9th Cir. 2002)); *Zarco v. Symons*, No. EDCV 22-594-MEMF, 2025 U.S. Dist. LEXIS 116759, at *9 (C.D. Cal. June 17, 2025); *Williams v. Cty. of L.A*., No. 2:24-cv-04071-DOC-BFM, 2025 U.S. Dist. LEXIS 78644, at *17 (C.D. Cal. Mar. 20, 2025) ("The Ninth Circuit has a liberal policy favoring amendments, and thus leave to amend should be freely granted.") (citing *DeSoto v. Yellow Freight Sys., Inc*., 957 F.2d 655, 658 (9th Cir. 1992)).

Amendment here would not be futile. *See Cafasso*, 637 F.3d at 1058 ("liberality in granting leave to amend [] subject to several limitations" including "futility") (internal quotation marks and citation omitted). As such, the Court has less discretion to deny leave to amend where a Plaintiff has not yet addressed alleged deficiencies. A district court "shall grant leave to amend freely 'when justice so requires.'" *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (quoting Fed. R. Civ. P. 15(a)). The Ninth Circuit has stated that "this policy is to be applied with extreme liberality." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990).

Nor is there any evidence in the record to substantiate any allegations that Plaintiff unduly delayed seeking to amend the SAC or is acting in bad faith or with dilatory motive. *See Back Story, LLC v. Amazon.com Servs*., 2025 U.S. Dist. LEXIS 18069, at *17-18 (C.D. Cal. Jan. 30, 2025) ("In the absence of any apparent or declared reason — such as undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. leave should be granted in conformity with Rule 15(a)(2).") (cleaned up; citations omitted). To the contrary, Defendants had no problem with the pleading for over a year and ***stipulated*** that their Answer sufficed

to close the pleadings. They now seek to reverse course and claim that no claim is actually stated.

Further still, the parties are not running up against the case's new trial date of September 21, 2026. Dkt. No. 46. Under the parties' new proposed dates, fact discovery does not close until January 30, 2026. *Id.* So X—the party that proposed new case deadlines—will not be prejudiced by Plaintiff filing a Third Amended Complaint.

## IV. CONCLUSION

X's Motion is wasteful and unnecessary and merely delays a merits determination. Rather than identifying issues and stipulating to amendment, Defendants filed a motion based on a strained and out-of-context reading of legal authority. But the Motion should still be denied. The SAC adheres to the notice pleading standard for direct and secondary copyright infringement, and Plaintiff need not plead around X's statute of limitations defense. Nonetheless, if the Court is inclined to grant the Motion, Plaintiff should be granted leave to amend to cure the alleged deficiencies considering that such leave should be granted with liberality.

Dated: July 10, 2025

**ONE LLP**

By: /s/ Taylor C. Foss
Taylor C. Foss
Peter R. Afrasiabi
Christopher S. Skinner
Attorneys for Plaintiffs,
Elizabeth Waterman and
NY Black and Gold Corporation