UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH WATERMAN, et al, <br><br> Plaintiffs, <br><br> v. <br><br> TWITTER, INC., et al, <br><br> Defendants. | Case No. 2:24-cv-04881-SRM-PD <br><br> **ORDER GRANTING DEFENDANT TWITTER, INC'S MOTION FOR JUDGMENT ON THE PLEADINGS [51]** |

Before this Court is Defendant Twitter, Inc.'s ("Defendant Twitter") Motion for Judgment on the Pleadings ("Motion"). Dkt. 51. Plaintiffs Elizabeth Waterman ("Plaintiff Waterman") and NY Black and Gold Corporation ("Plaintiff NYBG") (collectively, "Plaintiffs") oppose the Motion ("Opposition"). Dkt. 52. The Court has considered the parties' arguments, relevant legal authority, and record in this case. For the reasons stated, the Motion is due to be **GRANTED**.

I.    BACKGROUND

According to the Complaint, Plaintiff Waterman is a fine art photographer who owns and operates Plaintiff NYBG, an image centric social media company. Dkt. 33 at 2.[1] Plaintiff Waterman, both individually and through NYBG, created and copyrighted many

---

[1] Page numbers refer to CM/ECF pagination.

-1-

images which have generated substantial amounts of money through sales and publishing. *Id.* at 3–4. Plaintiff Waterman alleges that these professional photographs carry tremendous monetary value in the marketplace. *Id.* All the photographs at issue in this case were authored by Plaintiff Waterman, and all are owned by Plaintiffs. *Id.*

Defendant Twitter, now known as X, was the owner and operator of the social media platform Twitter until 2022. Dkt. 33 at 4. The alleged infringement at issue in this case began prior to the platform changing its name to X and continued after the rebrand. *Id.*[2] The social media platform allows users to post either text-based messages or images. *Id.* Defendant Twitter alleges that, as an internet service provider, it is precluded from liability for copyright infringement through the safe harbor provision of the Digital Millennium Copyright Act ("DMCA"). *Id.* This safe harbor provision requires providers to comply with requests from copyright owners by removing infringing materials upon receipt of a demand to do so, known as a "DMCA takedown request." *Id.* Plaintiffs filed DMCA takedown requests with Defendant Twitter's registered DMCA agent to remove twelve unique images. Dkt. 33 at 7–20. Plaintiffs allege Defendant Twitter took little action to cease their copyright infringement even after the DMCA takedown requests were sent. *Id.* at 5.

On June 10, 2024, Plaintiffs filed a complaint in this Court asserting a claim for copyright infringement under 17 U.S.C. § 501. Dkt. 1 at 16. On January 21, 2025, Plaintiffs filed their operative Second Amended Complaint ("SAC"). Dkt. 33. On June 20, 2025, Defendant Twitter filed a Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c). Dkt. 51. It argues that the SAC lacks substantive merit and is unsustainable because Plaintiffs have not pleaded facts to plausibly support direct, contributory, or vicarious infringement. *See id.* Lastly, it argues that some of Plaintiffs' claims are time-barred by the three-year statute of limitations. *See id.* at 8.

---

[2] For purposes of clarity and keeping in line with the official name of this case, the platform will be referred to as "Twitter."

## II.    LEGAL STANDARD

The legal standard for a motion for judgment on the pleadings is "functionally identical" to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Dworkin v. Hustler Magazine, Inc.*, 867 F. 2d 1188, 1192 (9th Cir. 1989). Therefore, when a claim is evaluated under Rule 12(c), the court asks whether the "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

The court "must accept all factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party." *Fleming v. Pickard*, 581 F. 3d 922, 925 (9th Cir. 2009). A judgment on the pleadings is proper when "the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *See Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F. 2d 1542, 1550 (9th Cir. 1989).

## III.    DISCUSSION

Defendant Twitter argues that (1) Plaintiffs fail to plausibly allege direct copyright infringement; (2) Plaintiffs fail to plausibly allege indirect infringement, either contributory or vicarious; and (3) many of Plaintiffs' claims are time-barred by the three-year statute of limitations. *See* Dkt. 51 at 13–22. The Court considers each argument in turn.

### A.    Direct Copyright Infringement

First, Defendant Twitter argues Plaintiffs fail to show direct copyright infringement because they cannot prove volitional conduct by Defendant Twitter. *See* Dkt. 51 at 13–15. Plaintiffs argue they sufficiently pleaded Defendant Twitter's volitional conduct in the SAC. *See* Dkt. 52 at 14–19.

To prove direct copyright infringement under 17 U.S.C. § 501, a plaintiff must show (1) "ownership of the allegedly infringed material," (2) that the defendant "violate[d] at least one exclusive right granted to" plaintiff under 17 U.S.C. § 106, and (3) causation. *See*

*VHT, Inc. v. Zillow Grp., Inc.*, 918 F. 3d 723, 731 (9th Cir. 2019). Since Defendant Twitter does not dispute that Plaintiffs have adequately alleged the first two elements of infringement, *see* Dkt. 51 at 13–15, the Court will focus its analysis on the causation element.

The third element of causation is commonly referred to as "volitional conduct" in copyright cases. *See Perfect10, Inc. v. Giganews, Inc.*, 847 F. 3d 657, 666 (9th Cir. 2017). The Ninth Circuit has clarified, however, that in the copyright context, it refers to the basic tort concept of proximate cause. *Id.* To plead causation, Plaintiffs must include allegations that Defendant Twitter exercised some degree of control over the images, "other than by general operation of its website." *See Zillow Grp., Inc.*, 918 F. 3d at 732; *see also BMG Rts. Mgmt. (US) LLC v. Joyy Inc.*, 644 F. Supp. 3d 602, 608 (C.D. Cal. 2022) (noting the distinction between active and passive participation in the alleged infringement is central to the legal analysis). The key factor is whether a website host takes actions that actively display photographs to users beyond the actions the users take themselves. *See Stross v. Meta Platforms, Inc.*, No. 2:21-cv-08023-MCS-AS, 2022 WL 1843129, at *2 (C.D. Cal. Apr. 6, 2022).

Plaintiffs' SAC alleges that Defendant Twitter "reproduced, displayed, and distributed" the images. Dkt. 33 at 6. Although Plaintiffs attach multiple screenshots of infringing uses, *see* Dkt. 33-3 at 2–20, these screenshots depict Twitter users who themselves posted Plaintiffs' images to their personal profiles. Plaintiffs fail to allege that Defendant Twitter used Plaintiffs' images specifically beyond what the users posted. *See generally* Dkt. 33. Nor do Plaintiffs explain how the Twitter website normally operates, or how Defendant Twitter actively participated in the alleged infringement. Instead, Plaintiffs summarily conclude that Defendant Twitter exercised some degree of control over the images other than by general operation of its website. *See id.* at 20. Without more, Plaintiffs fail to provide sufficient facts to support their allegation that Defendant Twitter is reproducing, displaying, and distributing the images outside the scope of normal operation of its website and actively participating in the infringement. *See Giganews*, 847 F. 3d at

668 (noting that a website that passively hosts an infringing work has not engaged in volitional conduct).

Critically, Plaintiffs' allegations lack proof of a nexus between Defendant Twitter's conduct and the alleged infringement. *See Zillow*, 918 F. 3d at 732 (quoting *CoStar Grp., Inc. v. LoopNet, Inc.*, 373 F. 3d 544, 550 (4th Cir. 2004)). Plaintiffs fail to allege that Defendant Twitter increased web traffic and generated revenue through specific use of their images. Therefore, Plaintiffs have failed to show that Defendant Twitter engaged in conduct beyond passive, standard operation of their website. *See Giganews*, 847 F. 3d at 668. Defendant Twitter's Motion for Judgment on the Pleadings, with respect to the direct copyright infringement, claim is **GRANTED**.

### B.    Indirect Copyright Infringement- Contributory Infringement

Second, Defendant Twitter argues Plaintiffs fail to show Defendant Twitter is liable through indirect copyright infringement. *See* Dkt. 51 at 15. Under federal copyright law, "[o]ne infringes contributorily by intentionally inducing or encouraging direct infringement." *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005) (citation omitted). Within the Ninth Circuit, a party may be held liable for contributory infringement if it "(1) has knowledge of another's infringement and (2) either (a) materially contributes to or (b) induces that infringement." *See Perfect10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F. 3d 788, 795 (9th Cir. 2007).

#### 1.    Knowledge of Infringement

As to the knowledge requirement, Defendant Twitter argues that Plaintiffs' SAC fails to identify any facts regarding their copyrighted works or provide any information in the DMCA takedown notices, as required by 17 U.S.C. § 512(c)(3)(A), to show that Defendant Twitter had knowledge of the infringement. Dkt. 51 at 17. Plaintiffs disagree and allege that Defendant Twitter had actual knowledge of the infringement due to the DMCA takedown notices, and contend they fully complied with the statute when sending the notices to Defendant Twitter. Dkt. 33 at 5.

To establish liability, the defendant needs "more than a generalized knowledge of the possibility of infringement." *See Ludvarts v. AT&T Mobility, LLC*, 710 F. 3d 1068, 1072 (9th Cir. 2013). The knowledge requirement is satisfied by actual knowledge, but courts are split when considering whether "reason to know" is sufficient. *See Atari Interactive, Inc. v. Redbubble, Inc.*, 515 F. Supp. 3d 1089, 1114 (N.D. Cal. 2021) (citing *Erickson Prods., Inc v. Kast*, 921 F. 3d 822, 832 (9th Cir. 2019); *cf. Ellison v. Robertson*, 357 F. 3d 1072, 1077 (9th Cir. 2004) (applying "reason to know" standard).

The Ninth Circuit clarified that when "a computer system operator learns of specific infringing material available on his system and fails to purge such material from the system, the operator knows of and contributes to direct infringement." *See A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1021 (9th Cir. 2001). However, "absent any specific information which identifies infringing activity, a computer system operator cannot be held liable for contributory infringement merely because the structure of the system allows for the exchange of copyrighted material." *Id.* (citing *Sony Corp. v. Universal City Studios, Inc.*, 464 U.S. 417, 436 (1984)). In addition, the knowledge requirement is met if the defendant has sufficient information to be able to find the specific infringing content on its system, but it need not be aware of the copyright registration or exact location of the infringing content. *See Perfect10 v. Giganews, Inc.*, 2013 WL 2109963 at *10 (C.D. Cal. Mar. 8, 2013), *aff'd*, 847 F.3d 657 (9th Cir. 2017) (finding knowledge where it was alleged defendant had a search function they could use to find allegedly infringing material identified in DMCA takedown requests on their platform).

Here, Plaintiffs assert they filed takedown notices with Defendant Twitter's registered agent. Dkt. 33 at 7–19. They also identify links to the infringing activity in the complaint. *Id*. Critically, however, Plaintiffs fail to allege any more facts as to whether their DMCA takedown requests complied with the statute, or even *whether the link to the infringing content was provided in the takedown request*. Plaintiffs state that they "complied" with DMCA requirements but have not pleaded exactly what was contained in the notices. *See, e.g.,* Dkt. 33 at 5; *see also See A&M Records, Inc.*, 239 F.3d at 1021.

Moreover, Plaintiffs' reliance on *Backgrid USA, Inc. v. Twitter, Inc.*, is misplaced. *See Backgrid USA, Inc. v. Twitter, Inc.,* No. 2:22-cv-9462-DMG(ADSx), 2024 WL 6847409 (C.D. Cal. June 7, 2024). In that case, the Court held that the DMCA notice was sufficient to satisfy the knowledge requirement because each notice provided a link to the infringing activity. *See id.* Here, however, Plaintiffs' claims as to the DMCA notices are devoid of any factual allegations regarding the details included in the takedown notices. *See generally* Dkt. 33. Absent any concrete details of what identifying information was contained in the takedown requests, the Court cannot conclude that Defendant Twitter had knowledge or reason to know of specific infringing material on its system.

2.     Material Contribution or Inducement

To be liable for contributory infringement, the defendant must know of the infringement and must either materially contribute to, or induce infringement. *See Visa*, 494 F. 3d at 795. Assuming arguendo that Plaintiffs have sufficiently pleaded the knowledge requirement, *see section 1, supra,* they nonetheless fail to plead that Defendant Twitter materially contributed or induced the alleged infringement. *See* Dkt. 51 at 18. Plaintiffs counter by stating that the DMCA takedown requests provided Defendant Twitter with actual knowledge of the infringement and their failure to take down the works materially contributed to the infringement. *See* Dkt. 52 at 22. Plaintiff contends that Defendant Twitter's receipt of financial benefit from the infringement is enough to prove inducement. *See id.*

A computer system is liable under a material contribution theory of infringement "if it has actual knowledge that specific infringing material is available using its system and can take simple measures to prevent further damage to copyrighted works yet continues to provide access to infringing works." *See Giganews*, 847 F. 3d at 671 (emphasis removed). The provider of a service is contributorily liable only if it intended that the provided service be used for infringement. *See Cox Commc'ns, Inc. v. Sony Music Ent.*, 146 S. Ct. 959, 965

(2026). The intent for contributory liability can only be shown if the party induced the infringement or the provided service is tailored to that infringement. *See id.*

Alternatively, a provider is said to induce infringement if it actively encourages infringement through specific acts. *Id.* A service is tailored to infringement only if it "is 'not capable of "substantial" or "commercially significant" non infringing uses.'" *Id.* at 967, (quoting *Metro-Goldwyn-Mayer Studios, Inc. v. Groskter, Ltd.*, 545 U.S. 913, 942 (2005) (Ginsburg, J., concurring)). Inducement requires affirmative steps to foster infringement. *See Visa*, 494 F. 3d at 801. The Court turns to consider whether Defendant Twitter materially contributed or induced infringement.

a)      Material Contribution

First, the Court considers whether Plaintiff adequately pleaded that Defendant Twitter materially contributed to the alleged infringement. *See Visa*, 494 F. 3d at 795. Assuming arguendo that Plaintiffs have sufficiently pleaded facts supporting its claim that Defendant Twitter knew of the infringement, Plaintiffs allege without citation that "Ninth Circuit authority instructs that actual knowledge… establishes material contribution." *See* Dkt. 52 at 22. Assuming that Plaintiffs are referring to the holding in *Giganews*, this understanding is mistaken. In *Giganews*, the Ninth Circuit held that the material contribution element was not satisfied because there were no simple measures available to remove infringing material. *See Giganews*, 847 F. 3d at 671. Even if Plaintiffs had properly alleged actual knowledge, that element only satisfies half of the test for material contribution. *See Visa*, 494 F. 3d at 795.

Moreover, alleging that a DMCA takedown notice qualifies as a simple remedial measure is also conclusory. Plaintiffs' SAC fails to allege facts that they provided the location of the infringing content to Defendant Twitter in the takedown requests. *See generally* Dkt. 33. Plaintiffs admit that Defendant Twitter is a sophisticated party and receives traffic at its website which results in significant financial gain. *See id.* at 6. Without more, a DMCA takedown requests that alleges only ownership of a copyrighted work and a bare allegation that the copyright is being infringed somewhere on the platform does not

provide a "simple" measure from which Twitter could take down the infringing content. *See Giganews*, 847 F. 3d at 671. Accordingly, the Court finds that Plaintiffs' fail to sufficiently plead material contribution.

b)    Inducement

Because there is no material contribution, the Court considers whether Plaintiff has sufficiently alleged inducement. *See Visa*, 494 F. 3d at 795. Upon reviewing the SAC, the Court finds that Plaintiffs fail to allege that Defendant Twitter took specific acts to induce the infringement. *See generally* Dkt. 33. Plaintiffs contend that Defendant Twitter's ability to receive internet traffic at its website is proof that it is infringing on Plaintiffs' copyright. Dkt. 52 at 22 (citing *Visa*, 494 F. 3d at 801). Moreover, Plaintiffs fail to describe what steps Defendant Twitter took to foster copyright infringement. However, stating that Defendant Twitter receives traffic at its website is conclusory and does not prove that it actively encouraged the infringement by users of its service to increase traffic to its website. Thus, Plaintiffs do not sufficiently allege that Defendant Twitter induced infringement. Accordingly, Defendant Twitter's Motion is **GRANTED** with respect to the contributory copyright infringement claim.

### C.    Indirect Copyright Infringement- Vicarious Infringement

Third, Defendant Twitter argues Plaintiffs fail to show vicarious copyright. *See* Dkt. 51 at 19–21. A defendant may be liable under a vicarious infringement theory "by profiting from direct infringement while declining to exercise a right to stop or limit it." *See Grokster*, 545 U.S. at 930. To prove vicarious infringement, Plaintiffs must show (1) that Defendant Twitter enjoyed a direct financial benefit from the infringing activity of its subscribers, and (2) that Defendant Twitter has *declined* the right and ability to supervise and control the infringing activity. *See Ellison*, 357 F.3d at 1076. The Court addresses each requirement below.

1.    Direct Financial Benefit

Defendant Twitter argues that Plaintiffs fail to allege that Defendant Twitter derived a direct financial benefit from the alleged infringement. *See* Dkt. 51 at 20. Plaintiffs argue

that a one-for-one link between the allegedly infringing content and increased revenue is not necessary to prove direct financial benefit. *See* Dkt. 52 at 24.

The Ninth Circuit has held that "financial benefit exists where the availability of infringing material 'acts as a "draw" for customers.'" *See Napster*, 239 F.3d at 1023 (quoting *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F. 3d 259, 263–64 (9th Cir. 1996)). Although, "there is no requirement that the draw be 'substantial.'" *See Ellison*, 357 F.3d at 1079.

Here, Plaintiffs do not allege any connection between the infringing activity and increased traffic Defendant Twitter experienced by virtue of the pictures existing on the platform. Plaintiffs' SAC contains one broad allegation that Defendant Twitter received commercial advantage from the infringing material -- "Twitter has generated revenue through its social media platform. The website traffic translates into substantial ill-gotten commercial advantage and revenue generation for Defendants as a direct consequence of their infringing actions." *See* Dkt. 33 at 6. However, the SAC fails to allege how increased traffic creates direct financial interest or how Defendant Twitter benefitted financially from having Plaintiffs' copyrighted images on its platform. Because the direct financial benefit test requires that the *availability of the infringing material in question* create a draw for customers, the Court concludes that Plaintiffs do not sufficiently plead facts to support their contention that Defendant Twitter had a direct financial benefit related to Plaintiff's images. *See Napster*, 239 F. 3d at 1023 (quoting *Fonovisa*, 76 F. 3d at 64).

### 2. Ability to Supervise or Control

In addition, Defendant Twitter argues that Plaintiffs' allegation that "Defendants exercise control over which images and posts are displayed and curated on Twitter" is also conclusory. Dkt. 51 at 19. Plaintiffs contend that filing a DMCA takedown notice with Defendant Twitter's registered agent necessarily proves the right and ability to supervise what occurs on Defendant Twitter's platform. Dkt. 52 at 23.

To establish the ability to supervise or control, Plaintiffs must present facts plausibly alleging that Defendant Twitter "has both a legal right to stop or limit the directly infringing

conduct, as well as the practical ability to do so." *See Perfect10, Inc. v. Amazon.com, Inc.*, 508 F. 3d 1146, 1174 (9th Cir. 2007). In *Amazon.com*, the Ninth Circuit held that defendant lacked the practical ability to "analyze every image on the internet, compare each image to all other copyrighted images that exist in the world… and determine whether an image on the web infringes someone's copyright." *Id.* (quoting *Perfect 10 v. Google, Inc.*, 416 F. Supp. 2d 828, 831).

Here, Plaintiffs sufficiently pleaded that Defendant Twitter has a legal obligation to stop the directly infringing conduct but do not support their contention that Twitter had the practical ability to do so based upon the facts presented here. Plaintiffs allege that Defendant Twitter, by having a registered DMCA agent, is subject to the safe harbor provisions of the DMCA and is required to comply with requests from copyright owners to take down infringing materials. *See* Dkt. 33 at 4. However, Plaintiffs fail to allege the requisite facts regarding Defendant Twitter's practical ability to do so in the absence of evidence that the DMCA takedown notices contained any identifying information as to infringing content on Defendant Twitter's platform. *See id.* As pleaded, the SAC merely states that DMCA takedown notices were filed and contained information regarding Plaintiffs' copyright. *See generally* Dkt. 33. Without more, Plaintiffs do not sufficiently allege that Defendant Twitter had the ability to supervise or control the infringing content on its platform.

Accordingly, the Court concludes that Plaintiffs' SAC fails to sufficiently allege that Defendant Twitter had a direct financial benefit or ability to supervise or control. Thus, Defendant Twitter's Motion is **GRANTED** with respect to the vicarious infringement claim.

### D.    Claims Time-Barred by Three-Year Statute of Limitations

Last, Defendant Twitter argues that claims regarding photos 1, 4, 6, and 8–12 are time-barred and therefore must be dismissed. *See* Dkt. 51 at 21–22. Plaintiffs contend that affirmative defenses cannot be raised in a Motion for Judgment on the Pleadings because it was not established in the SAC. *See* Dkt. 52 at 24–25. Moreover, Plaintiff contends that

the Court, when calculating statutes of limitation, should not use the date that the infringing post was made as the date the infringement was discovered. *See id.*

A claim may be dismissed on the ground that it is barred by the applicable statute of limitations only when "the running of the statute is apparent on the face of the complaint." *See Von Saber v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (quoting *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006)). "Under the discovery rule, a copyright infringement claim accrues – and the statute of limitations begins to run – when a party discovers, or reasonably should have discovered, the alleged infringement." *Media Rts. Techs., Inc. v. Microsoft Corp.*, 922 F.3d 1014, 1022 (9th Cir. 2019).

Plaintiffs argue that the date of the post cited in the SAC should not be taken as the date the infringement was discovered. *See* Dkt. 52 at 25. The Court acknowledges that the duty of diligence is only triggered by some event that calls their attention to the possibility of infringement. *See Starz Entm't, LLC v. MGM Domestic Television Distrib., LLC*, 510 F. Supp. 3d 878, 888 (C.D. Cal. 2021). The Court notes that it is possible Plaintiffs discovered the infringement within the three-year statute of limitations. However, Plaintiffs fail to otherwise allege when Plaintiffs discovered the posts. *See* Dkt. 33. Without more information, based upon the dates of the posts, it appears that the statute of limitations has run as to the listed photographs. In addition, Plaintiffs have not properly alleged that the discovery rule should apply. Thus, Defendant Twitter's Motion is **GRANTED** regarding claims as to photos 1, 4, 6, and 8–12 as they are time-barred by the three-year statute of limitations.

//

//

-12-

## IV.    CONCLUSION

Defendant Twitter's Motion for Judgment on the Pleadings is **GRANTED**. Dkt. 51. Plaintiffs are **GRANTED** leave to amend their complaint to cure the deficiencies identified in this order. Plaintiffs may file a Third Amended Complaint **on or before September 3, 2026**.

**IT IS SO ORDERED.**

Dated: August 3, 2026

HON. SERENA R. MURILLO
UNITED STATES DISTRICT JUDGE

-13-